UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATRINA RAE SCHOLD,

Plaintiff,

v.

MICHAEL J. ASTRUE. Commissioner of Social Security,

Defendant.

Case No. 3:12-cv-05429-RJB-KLS

REPORT AND RECOMMENDATION

Noted for March 1, 2013

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for child's disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On April 24, 2009, plaintiff filed an application for child's disability insurance benefits

and another one for SSI benefits, alleging in each application that she became disabled beginning February 27, 1997, due to diabetes mellitus, arthritis, a disc bulge, degenerative disc disease, depression, anxiety, endometriosis, chronic infections, sciatica, and rashes. See Administrative Record ("AR") 10, 145, 149, 175. Both applications were denied upon initial administrative review on August 31, 2009, and on reconsideration on October 27, 2009. See AR 76, 80, 89, 94. A hearing was held before an administrative law judge ("ALJ") on November 30, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 35-70.

In a decision dated December 23, 2010, the ALJ determined plaintiff to be not disabled. See AR 10-28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 16, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On May 15, 2012, plaintiff filed a complaint in this Court seeking judicial review of defendant's final decision. See ECF #1. The administrative record was filed with the Court on July 24, 2012. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in finding the medical evidence in the record did not fully corroborate her allegations of disability; and (2) in finding non-compliance with the instructions of her medical providers was a basis for discounting her credibility. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a

claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

I. The ALJ's Findings Regarding the Medical Evidence in the Record

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five thereof to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . in that she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above**

---

Sorenson, 514 F.2dat 1119 n.10.

> **amounts. The claimant is able frequently to climb ramps and stairs and to balance, kneel, crouch. She is able occasionally to climb ladders, ropes, or scaffolds and to stoop and crawl. The claimant must avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.).**

AR 17 (emphasis in original). After extensively summarizing the objective medical evidence in the record (see AR 18-23), the ALJ went on to further find in relevant part:

> The above discussion of the treatment record establishes that the claimant is significantly restricted in her physical functioning. But the discussion also establishes that no further restrictions are warranted than those set forth in the residual functional capacity. I conclude the objective medical evidence does not fully corroborate the claimant's allegations. There is no doubt the claimant has a very significant diabetes impairment, which has been difficult to control even when the claimant was compliant with her treatment regimen. It is clear this condition affects many body systems and contributes to the claimant's reported fatigue and decreased stamina. I therefore conclude that this impairment, in combination with her other impairments, limits the claimant to light work.

AR 23; see Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's subjective complaints are inconsistent with medical evidence can be valid basis for discounting claimant's credibility).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

Plaintiff first argues the ALJ erred by never explaining why the medical evidence in the record does not corroborate her subjective allegations of disability, when the ALJ also found she had a "very significant diabetes impairment" that "affects many body systems and contributes to [her] reported fatigue and decreased stamina." AR 23. But the ALJ's above findings must be read in context. As just noted, immediately prior to making those findings, the ALJ spent several pages summarizing the medical evidence in the record, including that concerning her diabetes mellitus. AR 18-23. None of that evidence indicates the presence of actual work-related limitations more severe than those assessed by the ALJ. In addition, the medical evidence that does contain such limitations, and which the ALJ also discusses in his decision (See AR 26), is fully consistent with the ALJ's RFC assessment (see AR 17).

Plaintiff counters that the medical evidence in the record does substantiate her subjective allegations of disability, arguing specifically that the record shows her diabetes has consistently been noted to be in "suboptimal control" despite "aggressive medical interventions," and "affects other organ systems." ECF #11, p. 4 (citing AR 707, 710-15, 717, 722, 724, 726, 728, 730, 732, 734, 736-37, 739, 741-43, 745-47). But again none of the evidence plaintiff cites establishes the

existence of any actual work-related limitations assessed by a medical source.[2] Indeed, despite reports of poorly controlled diabetes mellitus, objective clinical findings in the record are largely unremarkable, and fail to reveal or implicate restrictions in functioning greater than those found by the ALJ, even when considering only the time period plaintiff deems to be relevant here.[3] See AR 398, 402, 451, 458-59, 596, 613, 618, 625, 698, 708-15, 717, 721, 723, 725-32, 734-37, 738-47, 764, 775-76, 781-82.

II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.

---

[2] "The mere existence of an impairment is insufficient proof of a disability" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

[3] Plaintiff asserts "[t]he relevant period for commencement of disability in the Childhood Disability Insurance claim is ages 18 – 22 or in this case 11/9/03 to 11/9/07 and continuing forward for ongoing benefits," and "[f]or the SSI application it is the protected filing date, in this case: 4/24/09." ECF #11, p. 4 n. 3 (citing 20 C.F.R. § 404.350), n. 4. But as defendant points out, the regulation plaintiff cites merely provides in relevant part that a claimant is "entitled to child's benefits . . . if . . . [the claimant is] under age 18 [or] 18 years old or older and ha[s] a disability that began before [he or she] became 22 years old." 20 C.F.R. § 404.350(a)(5). Thus, the only time period limitation at play in cases such as this is that disability must have begun prior to age 22. See 42 U.S.C. § 402(d)(1)(B)(ii) ("at the time [the] application [for child's disability insurance benefits was] filed, the claimant must be "under a disability . . . which began before he [or she] attained the age of 22"). The claimant, furthermore, "must be disabled *continuously and without interruption* beginning before [his or] her twenty-second birthday until the time [he or] she applied for child's disability insurance benefits." Smolen v. Chater, 80 F.3d 1273, 1280 (9th Cir. 1996) (emphasis in original). Thus, there is no requirement – either in statute, regulation or case law – that the period under consideration by the ALJ is limited solely to that between ages 18 and 22. Rather, the claimant's alleged disability merely has to begin prior to age 22. Plaintiff argues that even though this may be true, child's disability insurance benefits may be paid only as of the claimant's eighteenth birthday, and thus the relevant time period is still after that date. But *payment* of benefits is an entirely different issue from determining disability in the first place. That is, a claimant is not entitled to any payment of benefits *unless and until* the claimant has established disability. Indeed, as can be seen from the legal authorities quoted above, it matters not when benefits are paid in determining the threshold issue of whether or not the claimant should be considered disabled and therefore eligible for such benefits in the first place. The same is true in regard to SSI benefits.

Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff challenges the ALJ's following stated reason for discounting her credibility:

> The medical evidence of record consistently shows noncompliance with her providers' instructions regarding testing and treating her diabetes mellitus. In December of 2002, this was discussed as a perennial problem. *See* Ex 11F/69. As discussed above, at various times, the claimant was noncompliant with counting carbs, with testing her glucose levels, and with the home exercise program prescribed by her physical therapist. While the early examples of noncompliance could be excused by the overwhelming nature of the diabetes mellitus diagnosis, as well as the strict demands of the disease, the claimant is an adult now and has lived with this condition for several years. Yet in March of 2010, the claimant reported that she was not following the diabetes diet all the time. Her doctor again discussed the importance of keeping her diabetes under better control. Ex 34F/26, 27. But the next month, the claimant again reported that she was not following the prescribed diet. Ex 34F/32.

AR 25. Failure to assert a good reason for not following a prescribed course o treatment "can cast doubt on the sincerity of the claimant's pain [or other symptom] testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff first argues the ALJ erred in considering evidence of non-compliance prior to her eighteenth birthday, because "disability must be established between ages 18 and 22." ECF #11, p. 5. As discussed above, however, the relevant time period is prior to age 22, and not just the period between ages 18 and 22.[4] The undersigned does agree with plaintiff that to the extent the ALJ relied on evidence of noncompliance during the time she was a minor he erred, as the evidence in the record indicates plaintiff was not in a position to be solely responsible for her own treatment compliance, as the ALJ himself seems to acknowledge. See AR 25; see also AR 252, 254, 256, 359, 495, 682-84. In addition, while there is some noted instances in the record of non-compliance with treatment (see AR 595, 612, 707-08, 710,764, 770, 775-76, 781), the majority of the records dated after plaintiff assumed the age of majority indicate otherwise (see AR 710-15, 717, 720-21, 723, 725, 727, 729, 731, 735, 737-38, 740, 742-43).

The undersigned also agrees with plaintiff that evidence of non-compliance with her physical therapist's prescribed home exercise program is not a sufficient basis for discounting her credibility here, given that the ALJ did couch his non-compliance discussion in terms of her diabetes mellitus, and there is no indication that the home exercise program was designed to help

[4] Plaintiff points to 20 C.F.R. § 404.1530 as further support for her argument here, because it "couches the need to follow prescribed treatment in terms of collecting benefits, not when the disability commenced." ECF #13, p. 4. This argument is wholly without merit. It is true that that regulation states in relevant part that "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [the claimant's] physician if this treatment can restore [his or her] ability to work," and that failure to "follow the prescribed treatment without a good reason" for a claimant that is "already receiving benefits," will result in stopping payment of those benefits. See 20 C.F.R. § 404.1530(a), (b). But again this language merely provides that in order to be eligible for benefits or to keep receiving benefits – i.e., to be found or remain disabled – the claimant must follow prescribed treatment. It says nothing about the time period for establishing disability for child's insurance benefits purposes, let alone requires or implies that the relevant time period for doing so is between the ages of 18 and 22 as plaintiff asserts.

plaintiff improve her health status relative to that condition. See AR 25; ECF #11, p. 6 (citing AR 413-16. Thus, the ALJ erred in discounting plaintiff's credibility on this basis. That being said, the ALJ provided other valid reasons for doing so, none of which plaintiff has challenged.

The ALJ, for example, discounted plaintiff's claims of disability resulting from her other alleged impairments based on a lack of evidentiary support therefore in the record. See AR 23-24; Regennitter, 166 F.3d at 1297. The ALJ also pointed to evidence of plaintiff's participation in rigorous physical activities "during her school years" and her later report of being a college student, as being inconsistent with her allegations of disability. See AR 24; Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (claimant's activities of daily living can "contradict his [or her] other testimony"); Smolen, 80 F.3d at 1284 (ALJ may consider claimant's activities in assessing his or her credibility). Accordingly, although one or more of the ALJ's reasons for discounting plaintiff's credibility were improper, this did not render the ALJ's credibility determination invalid, as it is supported by substantial evidence in the record overall for the reasons discussed above. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 1, 2013**, as noted in the caption.

DATED this 11th day of February, 2013.

Karen L. Strombom
United States Magistrate Judge